WILLIAMS, J.
—The question raised by this appeal is whether, under the facts alleged in the complaint, a covenant should be implied on the part of the defendant to furnish the ice for delivery to customers, There is no uncertainty in the agreement as to the quantity of ice. It was seventy-five to one hundred tons ■daily; at least seventy-five tons.
The general rule of the law relating to implied covenants are well settled and have been frequently stated by the courts. Booth v. Mill Co., 74 N. Y. 21; Jugla v. Trouttet, 120 N. Y. 27; 30 St. Rep. 182; Genet v. Canal Co., 136 N. Y. 608, 609; 50 St. Rep. 53; Jocquin v. Boutard, 89 Hun, 437; and cases therein referred to.
In Booth v. Mill Co., supra, it was said by Allen J.:
“There is no particular, formula of words or technical phraseology necessary to the creation of an express obligation to do or forbear to do a particular thing or perform a specific act If, from the text of an agreement and the language of the parties, either in the body of the instrument or in the recital or inferences, there is manifested a clear intention that the parties shall do certain acts, courts will infer a covenant in the case of a sealed instrument, or a promise if the instrument is unsealed, for nonperformance for which an action of covenant or assumpsit will lie.”
In Jugla v. Trouttet, supra, Bradley J. said:
“Where any act of the parties, or either of them, is essential to carry out the intention of the parties appearing by the provisions of the contract, the stipulation for the performance of such act will be deemed within its provisions as effectually as if actually expressed.”
. And in Genet v. Canal Co., supra, Finch, J., said
“I know very well that implied promises should be cautiously, and not hastily, raised. They always exist where equity and justice require the party to do or refrain from doing the thing in question; where the covenant on one side involves some corresponding obligations on the other; where, by the relation of the parties and the subject-matter of the contract, a duty is owing by one not expressly bound by the contract to the other party, in reference to the subject of it. In this court we have thrown some safeguards about the doctrine to secure its prudent application, and have said that a promise can be implied only where we .may rightfully assume that it would have been made if attention had been drawn to it, and that it is to be raised only to enforce a manifest equity or reach a result which the unequivocal acts of the parties indicate that they intended to, effect.”
In Jacquin v. Boutard, supra, which was an action brought to recover damages for a breach of a contract whereby the defendants employed the plaintiff in their business, among other things, to sell goods as their agent, the general term of the supreme court in this department held that, although there was no express promise in the contract that the defendants should furnish the plaintiff with samples and price lists of their goods, yet such promise *604 should be implied from the facts and circumstances surrounding the execution of the contract and the conduct of the parties thereunder; citing Booth v. Mill Co. and Genet v. Canal Co., supra, and other cases. Parker, J., said
“The failure of this promise to appear in the contract was not an intentional omission, but a mere inadvertence; and while-the-courts hesitate to imply promises in formal contracts, they should do so where otherwise the manifest intention of the parties would be defeated.”
These are some o'f the latest expressions of the courts upon this1 subject, and may well be relied upon as correctly stating the principles to be applied in this case; and, in view of these principles, we think the trial court was clearly in error in. holding that no-covenant on the part of the defendant to furnish the ice to the plaintiff could be implied. The agreement in form was mutual, and signed and sealed by both parties. It is stated that the defendant was engaged in the manufacture of ice; and'would have an output of from 75 to 100 tons per day, and that the intention was to dispose of this ice, and deliver the same to various customers. It further provided that the plaintiff should- take the ice from the defendant’s plant, and deliver it to the customers; that the plaintiff should incur great expense in providing horses, wagons, harnesses, etc., in preparation for the special work of taking and delivering the ice, and, if plaintiff failed promptly to take and deliver the ice as agreed, defendant might itself arrange to have it delivered, and plaintiff should be liable to any excess in the expenses thus incurred over and above the prices agreed tobe paid plaintiff under the agreement; that the price to be paid plaintiff for such delivery was fifty cents and seventy-five cents per- ton, and the term of the agreement was two1 years, with the option to the defendant after one year to purchase the horses, wagons, etc., from the plaintiff, and thus, by implication, terminate the agreement. The intention of the parties is very apparent from the language of the agreement itself. The defendant was to manufacture 75 to 100 tons of ice per day, and plaintiff was to take and deliver all of it to customers. There 'is no suggestion in the agreement, express. or implied, that the plaintiff should take .or deliver less than the whole amount of ice manufactured. How could such an intention be carried out unless the defendant furnished the ice to plaintiff so to deliver. The furnishing of the ice by the defendant was essential to carry out this intention, and therefore the court should imply a covenant to perform this act. The covenant on the part of the plaintiff involved a corresponding obligation on the part of the defendant to furnish the ice. In view of the relations of the parties and the subject-matter of the contract, a clear duty was owing on the part of the defendant to deliver the- ice. This was understood and assumed. Upon no other hypothesis it is conceivable that the plaintiff would have covenanted as he did. The covenant must be implied to reach a. result which the unequivocal acts of the parties indicated that they intended to effect. Sufficient reasons thus appear why the covenant contended for should be implied in this agreement, and it *605 does not seem to be necessary further to consider the facts or discuss the law of the case.
Our conclusion is that the judgment should be reversed, and a new trial ordered; with costs to. the appellant to abide the event.
All concur.